## DODD et al. v. LOUISVILLE BRIDGE CO. et al.

(Circuit Court, W. D. Kentucky. April 15, 1904.)

1. REMOVAL OF CAUSES—MOTION TO REMAND—PRESUMPTION OF REGULARITY OF PROCEDURE IN STATE COURT.

Where, in a suit by stockholders of a corporation, brought in a state court, relief was granted to the plaintiffs, their right to which was affirmed on appeal by the highest court of the state, on a subsequent removal of the cause, after the filing of supplemental pleadings, it will be assumed by the federal court, prima facie, at least, and for the purposes of a motion to remand, that, under the laws of the state, plaintiffs had the right to maintain the suit in their own names to enforce the rights asserted in their pleadings, and that the pleadings they were permitted to file in the state court were appropriate under the state practice.

2. SAME—CITIZENSHIP OF PARTIES.

Where plaintiffs sued as individuals, and the courts of the state in which the suit was brought sustained their right to maintain their suit

¶ 2. Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

in such capacity, their individual citizenship must determine the right of a defendant to remove the cause, notwithstanding an averment in the petition for removal that they sued as stockholders of a corporation, and that the recovery they sought was in the sole right and for the benefit of such corporation.

3. SAME—CORPORATION OF SEVERAL STATES.

A petition for removal filed by a defendant railroad company stated that it was a corporation incorporated under the laws of a number of different states, among which were the states of Indiana and Illinois; that it was formed by the consolidation of corporations of said several states; that the cause of action sued on arose out of a contract for the use of a bridge across the Ohio river owned by a Kentucky corporation of which complainants were stockholders, which contract was made by an Indiana railroad company subsequently consolidating with others to form the defendant. It further averred, as a conclusion from such facts, that, in respect of the obligation sued on, defendant was a corporation of the state of Indiana, and no other state. It did not appear in what state defendant was first incorporated, where its general offices were, where the cause of action arose, nor whether its assumption of the contract and its use of the bridge for which complainants sought to recover were in its capacity of an Indiana corporation or generally. *Held* that, in the absence of any statement in complainant's pleadings to show that defendant was sued as a citizen of Indiana alone, the facts alleged in the petition did not warrant such a finding, and, it being shown that one of the complainants was a citizen of Illinois, the cause was not removable on the ground of diversity of citizenship.

4. SAME.

The general rule is that jurisdiction on removal must be clear, in order to justify the federal court in retaining the case.

W. O. Harris, Kohn, Baird & Spindle, and Dodd & Dodd, for plaintiffs.

Lawrence Maxwell and Helm, Bruce & Helm, for defendants.

EVANS, District Judge. This suit was brought in the state court in 1897 by certain individual holders of the capital stock of the Louisville Bridge Company against that company and various railroads that for many years had used its bridge. Without going into details, it will suffice to say, in general terms, that the defendant railroads had used the bridge under an arrangement probably first made in 1877, by the terms of which they were to pay tolls sufficient to accomplish several objects—such, for example, as paying for maintenance and repairs, operating expenses, and semiannual dividends to the stockholders of the bridge company of 6 per cent. Stipulations were made by which a plan was devised for ascertaining at certain periods the tolls to be collected. In process of time the directors of the bridge company lowered the dividends to 4 per cent. semiannually. The plaintiffs alleged that the Pittsburg, Cincinnati, Chicago & St. Louis Railway Co. (hereinafter called the "P., C., C. & St. L. Ry. Co.") owned the majority of the stock of the bridge company, elected all its directors, and had, by virtue of these and other circumstances, wrongfully lowered the dividends, withheld the payment of its own tolls, and in other ways had injured the individual stockholders of the bridge company, which would not and could not remedy the troubles, because it was dominated by the P., C., C. & St. L. Ry. Co. The plaintiffs claimed that the bridge company was entitled to over $2,-000,000 in this way, which it would not collect, and hence the in-

dividual plaintiffs brought the suit. The action went to trial in the state circuit court some years ago, and in the main the judgment of that court was favorable to the plaintiffs, but on appeal to the Court of Appeals the amount recovered was reduced perhaps to one-tenth of what the circuit court had adjudged; the Court of Appeals, among other things, holding that the directors of the bridge company had a right to lower the dividends to its stockholders. Meantime the Louisville & Nashville Railroad Company had brought a suit against the bridge company for large sums alleged to have been charged to it in excess of what it would have had to pay if the other railroad companies had paid in full. Judgment was ultimately rendered in this case in favor of the plaintiff for many thousands of dollars. After the return of the case now before us to the state circuit court, amended and supplemental petitions were filed, to which reference will be made as we proceed, and by which it was sought to compel the P., C., C. & St. L. Ry. Co. to pay in this case a large part, if not all, of what had been recovered by the L. & N. R. R. in its suit, and certainly as much as $144,000. After the filing of the last of these amended and supplemental petitions, the case was removed to this court, and the plaintiffs have moved to remand it.

I have quite laboriously examined both the exceedingly voluminous record brought here by the removal of this action from the state court and the very interesting and important questions involved in the motion to remand. The suit was brought and prosecuted under the modes of procedure prescribed or allowed under the Kentucky Code of Practice. That procedure, while different from the practice in equity causes originally brought in the federal courts, is nevertheless to be entirely respected by this court, as to steps taken in the state courts up to the time of the removal. It follows as a result of this general proposition that it must be assumed that the plaintiffs had the indubitable right to sue in their own names in the state court to enforce the various equitable rights asserted in their numerous pleadings filed in the cause. Some of those pleadings were filed as matter of right, and some of them by the express leave of the state court. We must assume that this was all proper, and, prima facie, at least, that the plaintiffs have a right of action in their own individual names in seeking an enforcement of the demands they have asserted in their pleadings. The Kentucky Code of Practice prescribes when and how amended and supplemental pleadings may be filed, and upon the pending motion this case comes to us with those pleadings properly in the case, and properly presenting a claim by the individual plaintiffs against the P., C., C. & St. L. Ry. Co. The plaintiffs were, I think, required by the Kentucky practice to make the Louisville Bridge Company a party defendant. It was made such in the original petition, and appears to have taken up and to have continued the fight against the plaintiffs with considerable vigor. The supplemental and amended petitions, filed respectively July 16, 1903, October 15, 1903, and February 25, 1904, were each entitled in the cause, and no one of them made any change of parties. No parties, as such, were newly named in them, though relief was mostly, if not altogether, sought against the P., C., C. & St. L. Ry. Co. Op-

position to the filing of one or more of the three last-named supplemental pleadings was made, and this fact, under the Kentucky practice, was equivalent to appearance thereto; and, indeed, under that practice, if no new cause of action was set up, no additional appearance was necessary, the original appearance being sufficient.

Strong arguments were made on either side of the question of whether the last amended petition covered a new cause of action then for the first time asserted in the case against the P., C., C. & St. L. Ry. Co., and thus presenting a separable controversy in such time and form as to make the case removable, or whether the cause of action asserted in the amended petition filed October 15, 1903, which cause of action may possibly have been asserted, or at least foreshadowed, in earlier pleadings, though in all of them in a vague and general way, was only made definite and specific by the amendment of February 25, 1904. If the last amendment was only a better and more definite presentation of the cause of action theretofore attempted to be set up in the pleading of October 15, 1903, and possibly at various other times, by other pleadings filed in the cause, then the petition for removal came too late, because the time for answering the amended petition of October 15th was nearly or quite exhausted when the defendant answered that pleading in the state court on the 29th day of October, 1903, and the petition for removal was not presented until the succeeding March.

There may be much room for discussion upon all the questions thus indicated, and possibly the motion to remand might be decided by solving those questions; but, without at present attempting to solve them, I have, with some hesitation and doubt, reached the conclusion that the motion to remand can be determined upon another and possibly clearer ground.

Referring again to the very important factor that the plaintiffs had the right, as has been determined in this case by the Kentucky Court of Appeals, as well as by the chancery branch of the circuit court, to bring the action in their own names for the assertion and enforcement of their rights against the P., C., C. & St. L. Ry. Co., regardless of whether the bridge company joined with them as a plaintiff or not, it is found to be the fact that one of the plaintiffs, to wit, Mrs. Blakemore, is a citizen of Illinois, and that the defendant the P., C., C. & St. L. Ry. Co. is also a citizen of that state. The original petition for removal asserts that the P., C., C. & St. L. Ry. Co. is "a resident and citizen of the states of West Virginia, Ohio, Indiana, and Illinois, being a corporation chartered and organized under the laws of said states, and not under the laws of the state of Kentucky." The petition for removal makes a statement respecting the citizenship of the various plaintiffs, but, as the evidence shows that one of them is a citizen of Illinois, the grounds for removal are fatally defective for that reason, unless saved either by an amendment to the removal petition presently to be referred to, or by the legal effect of the following statement in the original petition, viz.:

"All of the plaintiffs in said suit, except the Louisville Bridge Company, are stockholders of said bridge company, and they brought their said suit in the right of and for the benefit of the said Louisville Bridge Company, and

any recovery which they sought was a recovery by and in the sole interest of said Louisville Bridge Company. The Louisville Bridge Company is a corporation chartered and organized under the laws of the state of Kentucky, and not elsewhere, and is a resident and citizen of said state, and was so at the beginning of the said suit, and has continuously been so since, and is now, and is not a resident or citizen of any other state."

Do those statements, even in the light of cases like Southern Ry. Co. v. Allison, 190 U. S. 326, 23 Sup. Ct. 713, 47 L. Ed. 1078, remedy or obviate the defect referred to, in view of the facts already noted as to the adjudicated right of the plaintiffs to sue individually, and especially as the importance of that right in this case has been illustrated and emphasized by the defense against their suit actually made on the merits by the bridge company? Can the determination of this question be affected by the answer of the bridge company filed in the case in this court since the removal, even though it might be apparent therefrom that its attitude to the plaintiffs had in fact been radically changed? Answers to these questions may depend upon what importance should be attached to the averments of the amendment to the petition for removal, which, without passing on its sufficiency, I have allowed to be filed in this court under what appeared to be the principles announced by the Supreme Court in Kinney v. Columbia Savings Association, 191 U. S. 80, 24 Sup. Ct. 30, 48 L. Ed. 103. The averments of the amended petition are as follows:

"Your petitioner, the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, by leave of the court, for amendment of its petition for removal of this suit filed on March 3, 1904, in the Jefferson circuit court, chancery branch, first division, says that in 1890 the Jeffersonville, Madison & Indianapolis Railroad Company, a corporation organized and existing under the laws of the state of Indiana, and of no other state, being the corporation which executed the contract of June 5, 1872, sued on by the plaintiffs, was consolidated, under the laws of the state of Indiana, with other railroad companies, into your petitioner, the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, and that the present suit is based wholly upon the obligation of your petitioner as an Indiana corporation, and as successor of said Jeffersonville, Madison & Indianapolis Railroad Company, and on account of having by virtue of said consolidation assumed the obligation of said Jeffersonville, Madison & Indianapolis Railroad Company, under the said contract of June 5, 1872, which is the basis of the present suit. Your petitioner therefore avers that, in respect of the obligation sought to be enforced by this suit, your petitioner is, and at the commencement of this suit was, and ever since has been, a citizen of the state of Indiana, and of no other state. Other corporations entering into said consolidation were citizens of the states of West Virginia, Ohio, and Illinois, and were permitted by the laws of their respective states to enter into said consolidation, and said consolidation, in respect of them, was made under the laws of their respective states."

It may be remarked that I can find nowhere in the plaintiffs' pleadings any averment of any kind respecting the incorporation of the P., C., C. & St. L. Ry. Co. All that I find in the defendants' pleadings on that subject is a denial by that company that it had purchased a majority of the capital stock of the Jeffersonville, Madison & Indianapolis Railroad Company, and an averment that the P., C., C. & St. L. Ry. Co. was made up of several railroad companies which had been merged and consolidated into it. In the record, however, we find an exhibit to the deposition of plaintiff John L. Dodd, consisting of a copy of the articles of incorporation entered into in In-

diana under the laws of that state, by which the P., C., C. & St. L. Ry. Co. was made a corporation of that state. This exhibit also shows that several Indiana railroad companies were thus merged and consolidated, among them the J., M. & I. Ry. Co. The articles of incorporation on their face also show that the P., C., C. & St. L. Ry. Co. had previously been incorporated in various states—such as Pennsylvania, West Virginia, Ohio, Indiana, and Illinois. What state was the original parent, so to speak, of the corporate body, is nowhere shown, or attempted to be shown. It is obvious enough that none of the parties to the suit regarded it as at all important to disclose in their pleadings the citizenship of the defendant the P., C., C. & St. L. Ry. Co. until the petition for the removal of the cause was filed, on March 3, 1904. If the plaintiffs had thought it important to proceed against the P., C., C. & St. L. Ry. Co. as an association of corporations, or as a citizen either of Illinois or Ohio or West Virginia, rather than against it as a citizen of Indiana, they would have determined that question for themselves in their pleadings, and would not have attempted it merely at this stage in their argument only. If the defendant had at an earlier date regarded it as important to settle the question of the citizenship of the corporation proceeded against upon the claims described in the plaintiffs' pleadings, by a motion to require the plaintiffs to make their pleading specific and definite in that respect, it might have compelled the plaintiffs to differentiate in the premises, and to plainly state which of the several distinct corporations created by the various states, and all of which had the same name, they were suing. But nothing of either sort was done, nor was it at all necessary, so far as the litigation on the merits was concerned. Now, however, it has become important, and each side has hurried to that conclusion which its interest in the question of removal seemed to dictate. It need not be pointed out that their conclusions differ.

It is not asserted that the P., C., C. & St. L. Ry. Co. is not a citizen of Illinois, nor of each of the other states under whose laws it was incorporated. On the contrary, it is shown to be a citizen of that state, also, and a copy of the articles of incorporation was read as evidence on the hearing of the motion to remand. It is not shown which state first incorporated it, nor is it claimed that the contract with the J., M. & I. R. Co., which was sued on by the plaintiffs, was executed in Indiana, nor that the cause of action described in the amended and supplemental petition filed February 25, 1904, arose in Indiana; nor, indeed, is it claimed, unless as a mere inference of law, that the Indiana corporation is the P., C., C. & St. L. Ry. Co., and certainly not that it is the only P., C., C. & St. L. Ry. Co. which used the bridge company's bridge, and became indebted to it for tolls. It is not shown where the books of the P., C., C. & St. L. Ry. Co. were kept, nor whether there were separate accounts with the bridge company kept by or on behalf of the Indiana corporation respecting traffic which might have originated, for example, at Chicago or Pittsburg; nor has it been shown how the P., C., C. & St. L. Ry. Co., or any of its component parts, complied with section 571 of the Kentucky Statutes of 1903, although each and all of these things might

have aided in ascertaining which P., C., C. & St. L. Ry. Co. is the litigant defendant in this case. The section referred to requires every nonresident corporation doing business in Kentucky to file a certificate designating a person on whom process may be served.

One disadvantage of being incorporated under the same name in several states is not that it leaves mere citizenship doubtful, for the corporation is a citizen of each state which incorporates it, but, as here, the disadvantage is that it leaves doubtful the question of whether one citizen individually owes and is sued for a debt, or whether all of several citizens owe and are sued upon it. It might in this case help us if we knew from the pleadings or the evidence that the cause of action, even if it is transitory, arose in Indiana, as, if it did, that fact might make it presumably true that the plaintiffs' right is against the Indiana corporation; but, as the cause of action apparently must have arisen in Kentucky, where the services were rendered by a Kentucky corporation—possibly to some extent to each one of the P., C., C. & St. L. Ry. Cos.—we cannot, in view of all the facts disclosed by the record, assume that the Illinois corporation, the Ohio corporation, the West Virginia corporation, and the Indiana corporation are not co-contractors, or otherwise jointly liable for that demand of the bridge company for tolls, the remedy to enforce which is being worked out through certain of the bridge company's individual stockholders in their own names, one of whom is a citizen of Illinois, of which state, also, one of the associated corporations is a citizen. At all events, there is no presumption growing out of the facts disclosed that the plaintiffs did not sue the Illinois corporation as much and as well as the others, inasmuch as no one of said P., C., C. & St. L. Ry. Cos. was a citizen of Kentucky. When we carefully analyze the amended removal petition, and assume its statements of fact to be true, we find that it avers that the J, M. & I. R. Co. was consolidated under the laws of Indiana with other railroad companies into the defendant the P., C., C. & St. L. Ry. Co., which was made up of a consolidation of corporations created under various states, and, further, that the present suit is based wholly upon the obligation of said defendant "as an Indiana corporation," and as successor of the J., M. & I. R. Co., and on account of the said defendants having, "by virtue of the consolidation," assumed the obligations of the J., M. & I. R. Co. existing under the contract which is the basis of the present suit. The amended petition does so recite, but it does not aver that in fact that corporation only which is a citizen of Indiana assumed, by contract, the obligations of the J., M. & I. R. Co., though it may be that it assumes, as a legal inference, that the P., C., C. & St. L. Ry. Co. did so assume those obligations as an Indiana corporation. The amendment goes on to aver further that other corporations entering into the consolidation were citizens of West Virginia, Ohio, and Illinois; and this appears to me to make it essential that the petition for removal, as amended, in order to be sufficient to accomplish the result desired, should leave nothing for inference, especially in the absence of any averment as to the original incorporation of the P., C., C. & St. L. Ry. Co., and as to the state in which the cause of action actually arose, and as to the other matters, the

absence of which has been noticed.  The facts upon which a right to remove a case to this court is demanded should be specifically and clearly manifested by the petitioner who seeks that relief.  The presumption that the federal court is without jurisdiction must be overcome.  Robertson v. Cease, 97 U. S., at page 648, 24 L. Ed. 1057; Grace v. American Central Ins. Co., 109 U. S. 283, 3 Sup. Ct. 207, 27 L. Ed. 932; Bors v. Preston, 111 U. S. 255, 4 Sup. Ct. 407, 28 L. Ed. 419.

Where corporations of exactly the same name are incorporated under the laws of several states, and are in fact operated by one set of officers, and under one management alone, and which management is shown by the record to have its principal office and place of business outside of a named state, any claim of adverse citizenship which is evidently based upon an inference, instead of a clear statement of facts, should not be regarded as sufficient, especially when the exact facts might be, but are not, shown in proper fullness of detail.  The conclusion which the pleader has drawn in constructing the amended removal petition is thus stated:

"Your petitioner therefore avers that, in respect to the obligations sought to be enforced by this suit, your petitioner is  *  *  *  a citizen of the state of Indiana, and no other state."

Is the court, also, in the concrete case before us, authorized or required to concede the force of the "therefore," and to draw the same conclusion?  In the absence of a statement of the essential facts referred to, we do not think so.  If we assume, without proof, that the averments of the removal petition, as amended, are true, so far as it positively states facts, and not mere recitals or conclusions of the pleader, we find that, while the P., C., C. & St. L. Ry. Co. is a citizen of Illinois as well as of Indiana, yet that it consolidated with an Indiana corporation which had outstanding obligations which the P., C., C. & St. L. Ry. Co., "by virtue of the consolidation," assumed.  This is about the sum of facts distinctly stated.  For purposes of removal to this court, the pleader from that spare statement of facts draws the inference of law that the assumption of the obligations of the J., M. & I. R. Co. was by the Indiana P., C., C. & St. L. Ry. Co. alone, and that the citizenship of the corporation for the purpose of removal must be determined upon the fact thus stated, or, rather, that the identity of the litigant opposed to the plaintiffs and its citizenship must be thus ascertained.  Without stating other facts, the pleader assumes as a legal conclusion that the assumption of the obligations of the J., M. & I. R. Co. was, as he expressed it, "by virtue of the consolidation."  But the pleader also says that the corporations entering into the consolidation were citizens of the states of West Virginia, Ohio, Illinois, and Indiana, and does not by any averment of fact, as distinguished from a conclusion of law, attempt to show that one only of the integral parts of the consolidation assumed the outstanding obligations of the J., M. & I. R. Co.  It is all left to inference, as the articles of consolidation are not exhibited.  In short, the conclusion drawn in the amendment to the petition for removal is that, "in respect to the obligations sought to be enforced by this

130 F.—13

suit," the P., C., C. & St. L. Ry. Co. is an Indiana corporation only. It is not shown by the articles of incorporation or those of the consolidation of the P., C., C. & St. L. Ry. Co., or otherwise, that any such distribution of obligations was made to the separate P., C., C. & St. L. Ry. Cos. of the several states which created corporations with that name; nor can it, I think, be fairly inferred that there was any such distribution of obligations among them, in the absence of a positive statement of the fact, when we consider the facts disclosed by this record, some of which have been specifically referred to.

I conclude that while the citizenship of the P., C., C. & St. L. Ry. Co. is distinct and separate in the several states of West Virginia, Ohio, Indiana, and Illinois, which states severally created corporations of that name, the obligations of the several corporations were presumably united and joined, and that in this case the Illinois corporation was as much and as certainly bound to the plaintiffs, and as much sued by them, as was the Indiana corporation. It is not shown nor contended that the Indiana corporation has a different and independent management. On the contrary, it is shown by the record that the management of that P., C., C. & St. L. Ry. Co. which incurred the liability for the tolls sued for was located at places outside of Indiana.

It is important in this connection to remember that the greater part, if not all, of the claim against the P., C., C. & St. L. Ry. Co. yet in controversy, and which was set up in the later and supplemental pleadings filed by the plaintiffs in the state court, arose under the management just referred to, and while that management operated the P., C., C. & St. L. Ry. Co. as an entirety. This, too, for the most part, was long after the creation of the several corporations of that name. The services of the bridge company, out of which the claim arose, were rendered to the P., C., C. & St. L. Ry. Co., and not to the J., M. & I. R. Co. In the light of the record, the former company, if anybody, owes the tolls on its own account, and in no proper sense on the account of the latter, although by general acquiescence the P., C., C. & St. L. Ry. Co. years ago took the place of the J., M. & I. R. Co. in then existing arrangements, and thus entirely superseded and eliminated the latter, with the full knowledge and consent of the bridge company. For many years the J., M. & I. R. Co. has been dead, or at least moribund. It is not a going concern.

Indeed, the effect of it all seems to be that the court is asked to extend and enlarge the test of citizenship in a case like this so as to make the question determinable, at least to some extent, upon whether an association of corporations like the P., C., C. & St. L. Ry. Co. can in this court, in Kentucky, at its own option, treat itself as a citizen of Indiana only, merely because, in an antecedent or general way, it contracted upon the same subject-matter with a citizen of that state. Legislative creation does determine the citizenship of a corporation, but in this case that proposition presents no difficulty in itself. The doubt is as to which of the several corporations of the same name created by several states is the litigant opposed to and

sued by the plaintiffs, and we are asked to solve that question and that doubt largely upon an inference only, and not upon a full and explicit statement of facts.   We are asked to hold that, because there was and is a citizen of Indiana named the P., C., C. & St. L. Ry. Co., and because a citizen of that name was substituted in a contract made by another Indiana corporation, therefore, and notwithstanding other states had incorporated a P., C., C. & St. L. Ry. Co., and notwithstanding the several incorporations of that name were all associated under one management, with its chief offices outside of Indiana, still that when citizens of Kentucky and Illinois sue a P., C., C. & St. L. Ry. Co. in this state, the fact that the substitution was made shall be accepted as conclusive of the fact that the plaintiffs were suing the Indiana corporation alone, and not any one of the others.   We think no decision of any court will justify a ruling which supports that contention, and we cannot conclude, upon the petition for removal and the record, either that the Indiana corporation alone is the real litigant opposed to the plaintiffs, and which alone was sued by them, or that it alone is the corporation which used the bridge company's property, and consequently became liable for the tolls.   The only test, we repeat, of the citizenship of a corporation, is the legislation creating it.   The test here sought to be invoked for the determination of the question of which corporation was sued might become kaleidoscopic and elusive, inasmuch as there is no reason why any one or all of the P., C., C. & St. L. Ry. Cos. might not have used the bridge of the bridge company in Kentucky.   Citizenship, per se, is easily ascertainable with respect to a corporation, but whether a debt was created by one corporation or another, when they are as intimately associated as in this instance, and whether one corporation or another, under such circumstances, is the litigant, are questions of fact; and, when the right of removal is claimed, the petition therefor should show the facts very explicitly and fully, and not leave them to inference in any essential respect.

There is an obvious ambiguity in the premises, growing out of the creation by several states of a corporation of the same name; and when the associated corporations seek, or when any one of them seeks, to exercise the right of removal, the claim to that right should be made manifest.   In such cases the petition for removal should clear up the ambiguity, and make plain the exact situation.   As we have endeavored to show, this has not been done in this instance. On the contrary, doubt as to which corporation should be regarded as the real litigant is intensified at the crucial point by the petition as amended, and by the other facts we have stated.

We may note some of the numerous authorities bearing on the question, and the general propositions they establish:

First. Although corporations have the same name, yet, if they are incorporated under the laws of different states, they are separate and distinct corporations, and each is a citizen of that state alone which created it.   Ohio, etc., R. Co. v. Wheeler, 1 Black, 286, 17 L. Ed. 130;  Railroad Co. v. Whitton, 13 Wall. 283, 20 L. Ed. 571;  Muller v. Dows, 94 U. S. 444, 24 L. Ed. 207;  Nashua, etc., R. Co. v. Lowell

R. R., 136 U. S. 357, 10 Sup. Ct. 1004, 34 L. Ed. 363. There are many other cases to the same effect.

Second. The fact that there was a consolidation of several railroads in several states, under the sanction of state legislation, does not change the result. Paul v. B. & O. R. R. (C. C.) 44 Fed. 513; Baldwin v. Chicago, etc., R. Co. (C. C.) 86 Fed. 167. While in some of the cases stress seems to be laid on the question of which was the first state to create a corporation situated like the P., C., C. & St. L. Ry. Co., and also some upon the question of where the cause of action arose, yet in none of them is either of those questions made a controlling factor in the decision. Still less, we think, can the question of where a contracting party resided be made so, especially when it is neither claimed that such party contracted at its residence, nor that the services were performed there.

Third. In St. Louis, etc., Ry. v. James, 161 U. S. 555, 16 Sup. Ct. 621, 40 L. Ed. 802, and again in Southern Ry. Co. v. Allison, 190 U. S. 326, 23 Sup. Ct. 713, 47 L. Ed. 1078, it has been established that for the purposes of jurisdiction there is a conclusive presumption that all the stockholders of a corporation are citizens of the state creating it. When a corporation, for example, of Pennsylvania, is, by its own name, instead of the names of citizens, incorporated by a law, for example, of Indiana, this would make the Pennsylvania corporation, and not the citizens who were its stockholders, a citizen of Indiana, for jurisdictional purposes, notwithstanding the rule that the stockholders of the Pennsylvania corporation were still presumed to be citizens of Pennsylvania. Memphis & C. R. Co. v. Alabama, 107 U. S. 581, 2 Sup. Ct. 432, 27 L. Ed. 518. Priority of creation of a corporation in this connection sometimes becomes important, but in the case before us the bridge company corporation does not sue, and hence the rule in the James Case and in the Allison Case, which has just been referred to, does not apply. In this connection it must be remembered that it is res adjudicata that the individual plaintiffs have the right to sue, and are properly exercising that right in this case. They do not sue in the right of the bridge company, but in their own individual right, and hence their citizenship is the important question.

To sum it all up, the question would, indeed, have been a simple one, if, as the plaintiffs contend, it is apparent that they, including Mrs. Blakemore, a citizen of Illinois, are suing that P., C., C. & St. L. Ry. Co. which was incorporated under the laws of that state. So, on the other hand, it would have been equally simple, if, as the defendant contends, the plaintiffs are suing no one except that P., C., C. & St. L. Ry. Co. which was incorporated under the laws of Indiana. But which of the various corporations of that name the court must regard as the real defendant litigant is a much more complex proposition, and the indicia, both upon the one side and upon the other, are quite obscure and unsatisfactory. The burden in the premises, being on the party seeking the removal (Carson v. Durham, 121 U. S. 425–26, 7 Sup. Ct. 1030, 30 L. Ed. 992), places that party at any disadvantage that may inhere in the situation, and, as

already pointed out, requires that it shall so far clear up all ambiguity and obscurity as to make it reasonably certain that the jurisdiction of this court has attached.

The defendant relies on the assertion that a P., C., C. & St. L. Ry. Co. which was an Indiana corporation consolidated with the J., M. & I. R. Co., which was another Indiana corporation, and that that P., C., C. & St. L. Ry. Co. took the place of the J., M. & I. R. Co. in the contract sued on, and says that therefore, in respect to the claim sued on, the defendant litigant in this case is the Indiana corporation. Probably, on the whole record, no great plausibility would be imparted to this contention, in the absence of fuller and more explicit averments than are made in the petition for removal, as amended, if it were not that the J., M. & I. R. Co. alone had tracks that extended to the bridge company's bridge, which was constructed from Indiana to Kentucky across the Ohio river; but this plausibility might be, and probably is, neutralized by the fact that the entire management and control of that P., C., C. & St. L. Ry. Co. which, as an actual, living potentiality, used the bridge and became liable for the tolls, had its home far outside of Indiana. Mere propinquity cannot furnish the ultimate test for a decision of the question to be solved. As to the pending motion, the question is, which of the numerous P., C., C. & St. L. Ry. Cos. is the real litigant defendant, and which one of them was sued by the plaintiffs? Previous to the petition for removal, neither side undertook to make that matter at all definite or certain, nor, as we have seen, can either party do it now at its own option, nor by mere assertion or inference; but we hold that the just conclusion upon the matter, in view of the impossibility of any definite finding that any particular one of the P., C., C. & St. L. Ry. Cos. alone was sued, is that they were all sued—the Illinois company as much and as well as the others—and hence that the removal to this court cannot be maintained on the ground of adverse citizenship, because one of the plaintiffs is a citizen of Illinois.

If the plaintiffs had brought their suit in Indiana, or in any other one of the states which had incorporated the railway company, there could not have been a removal, because the company, as the authorities establish, could not have claimed, in respect to suits in that state, that it was a citizen of any other state. But as this suit was brought in Kentucky, which did not incorporate the company, at this late date, upon this record, and under all the circumstances referred to, I do not think it lies in the mouth of the P., C., C. & St. L. Ry. Co. to say, in the present emergency, that it, as a citizen of Indiana, rather than as a citizen of Illinois, is the litigant defendant in this suit, in the face of a claim to the contrary now made by the plaintiffs. It seems to me that the defendant has no right so to elect at this stage, under the facts of this case.

Thus far we have proceeded upon the idea that the allegations of the petition for removal, as amended, were true, so far as they stated facts and not mere legal conclusions. As many of the allegations of fact, however, were controverted of record, the matter is still clearer, inasmuch as, to say the least, the proof can hardly be considered as being as strong as the allegations.

2. While giving the other feature of the case more prominence, I am not at all sure, under the Kentucky practice, and under the decisions of the state courts in this case, that the amended and supplemental petition filed February 25, 1904, is to be regarded otherwise than as perfecting the cause of action insufficiently set up in the pleading of October 15, 1903. If it be correct to say that the amendment of February was merely supplemental to that of October, making it definite and sufficient, then the application for a removal came too late—first, because that application was not made until March 3, 1904; and, second, because the P., C., C. & St. L. Ry. Co. on October 29, 1903, had filed its answer to the amendment of October 15th, and March 3d would have been long after the time for answering it had expired.

3. Again, disregarding as of no importance in the decision of pending questions the answer of the bridge company filed in this court since the removal, it is altogether probable, under the Kentucky practice, that the bridge company was an indispensable party defendant to the litigation, and, as that company is a Kentucky corporation, there was not the requisite diverse citizenship to authorize a removal. This view may be regarded as emphasized by the fact that the bridge company, up to the removal to this court, had ranged itself with the railway company, and had been an active litigant in the case against the plaintiffs, and in opposition to their claims.

4. If the bridge company was an indispensable party defendant, it may be doubted whether there was a separable controversy between the plaintiffs, on the one side, and the P., C., C. & St. L. Ry. Co., on the other, which could be fully settled, as between them, without the presence of the bridge company as a party to the cause.

5. To say the very best in behalf of the P., C., C. & St. L. Ry. Co., there is much doubt about the right of removal in this case. The general rule is that jurisdiction on removal must be clear, in order to justify the federal court in assuming cognizance of the case. Unless it is, in the legal sense, fairly clear, the case should be remanded. Johnson v. Wells, Fargo & Co. (C. C.) 91 Fed. 4; Fitzgerald v. Railroad Co. (C. C.) 45 Fed. 812; Hutcheson v. Bigbee (C. C.) 56 Fed. 327; Coal Co. v. Haley (C. C.) 76 Fed. 882.

My conclusion upon the whole case is that the plea to the jurisdiction of this court, and the motion to remand the action to the state court, should be sustained.